IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                     No. CR. S-09-121

CHRISTOPHER WARREN,

        Defendant.

_____/

---oOo---

REPORTER'S TRANSCRIPT

ENTRY OF GUILTY PLEA

TUESDAY, JANUARY 10, 2012

---oOo---

Reported by:      KELLY O'HALLORAN, CSR #6660

                         APPEARANCES




For the Plaintiff:


     BENJAMIN B. WAGNER
     United States Attorney
     501 I Street, Suite 10-100
     Sacramento, CA  95814
     BY:  RUSSELL L. CARLBERG
          Assistant U.S. Attorney

For the Defendant:

     LAW OFFICES OF JAMES R. GREINER
     555 University Avenue, Suite 290
     Sacramento, CA  95825
     BY:  JAMES R. GREINER

1          SACRAMENTO, CALIFORNIA

2     TUESDAY, JANUARY 10, 2012, 9:30 A.M.

3              ---oOo---

4          THE CLERK:  Criminal S-09-121; United States versus

5     Christopher Warren.

6          MR. CARLBERG:  Your Honor, good morning.  Russell

7     Carlberg appearing for the United States.

8          THE COURT:  Good morning.

9          MR. GREINER:  Good morning, your Honor.  James Greiner

10    appearing with Christopher Warren who is present in court in

11    custody.

12         MR. CARLBERG:  Your Honor, I have a signed

13    disposition.  May I hand that up to Mr. Vine?

14         THE COURT:  You may.  You mean a signed plea

15    agreement; right?

16         MR. CARLBERG:  Plea agreement.  Sorry, your Honor.

17         THE COURT:  All right.  The parties have provided the

18    Court with a written plea agreement which I understand

19    represents the agreement of the parties.

20         Mr. Greiner, does your client still wish to enter a

21    plea of guilty this morning to Count 25?

22         MR. GREINER:  He does, your Honor.

23         THE COURT:  All right.  Mr. Vine, if you'd administer

24    the oath to Mr. Warren, please.

25         THE CLERK:  Yes, your Honor.  Mr. Warren, can I have

1    you raise your right hand, please.

2            (Defendant sworn.)

3            THE DEFENDANT:  I do.

4            THE COURT:  All right.  Mr. Warren, I'm informed that

5    you wish to enter a plea of guilty this morning to Count 25

6    of this indictment; is that correct?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  You've taken an oath to answer my

9    questions truthfully.

10           MR. CARLBERG:  Your Honor, I hate to interrupt, but I

11   want to make sure the Court's aware that he's also pleading

12   to Count 43, the aggravated identity theft charge.

13           THE COURT:  I'm sorry.  I missed that.

14           Okay.  Count 25 and Count 43; correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Okay.  You have taken an oath to answer my

17   questions truthfully.  Your answers will be subject to the

18   penalties of perjury for making a false statement if you do

19   not answer truthfully.  I'm going to ask you a number of

20   questions to make sure that this is a valid plea.  If you do

21   not understand any of the questions that I ask, just let me

22   know, and I'll rephrase them to make sure you understand

23   them.  And if at any time you want to speak your attorney,

24   let me know that, and I'll allow you to do so.

25           Okay?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Let's begin with having you state your

3   correct name for the record.

4          THE DEFENDANT:  Christopher Jared Warren.

5          THE COURT:  And what is your date of birth?

6          THE DEFENDANT:  August 25, 1982.

7          THE COURT:  Have you ever been treated for any mental

8   illness?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  Are you currently under the influence of

11   any alcohol, drugs, or medication?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Have you taken any drugs, alcohol, or

14   medication, prescription or otherwise, within the last 24

15   hours?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  All right.  Do either counsel know of any

18   reason why the defendant is not competent to enter a plea

19   this morning?

20          MR. CARLBERG:  No, your Honor.

21          MR. GREINER:  No, your Honor.

22          THE COURT:  All right.  Mr. Warren, are you fully

23   satisfied with the representation and advice given to you in

24   this case by your attorney?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Okay.  Just as an aside, is Mr. Cavell

2     still a fugitive?

3          MR. CARLBERG:  He is, your Honor.

4          THE COURT:  Okay.  All right.  Mr. Warren, do you

5     understand that your attorney had discussions with the

6     attorney for the government in this case concerning your

7     change of plea and that those discussions resulted in this

8     written plea agreement?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Are you entering your plea of guilty this

11     morning to these two counts voluntarily?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And are you entering your plea because you

14     are, in fact, guilty?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Mr. Carlberg, if you would please describe

17     the terms of the plea agreement.

18          MR. CARLBERG:  Yes, your Honor.  The defendant has

19     agreed to plead guilty to Count 25 of the indictment, wire

20     fraud, and to Count 43, aggravated identity theft.  He's

21     agreed to waive certain constitutional rights, waive all

22     rights under the Hyde Amendment, waive appeal and collateral

23     attack of his plea and conviction, and waive appeal and

24     collateral attack of his sentence.  There are certain

25     stipulated guidelines calculations, including the base

1    offense level, loss amount, sophisticated means, leadership

2    and abuse of position of trust.

3         The defendant has stipulated under Section 1B1.2(c) of

4    the guidelines that he has also committed the offenses of:

5         One, false statements in application for passport, in

6    violation of 18 United States Code, Section 1542, that form

7    Counts 41 and 42 of the indictment, and that he has committed

8    conspiracy to commit wire fraud, 18 United States Code,

9    Section 1349, in connection with fraud he committed at Loomis

10   Wealth Solutions and Nationwide Lending Group.  This is

11   stipulated as relevant conduct concerning total losses of

12   over $19 million.

13        The defendant agrees not to argue for any departure

14   under the guidelines.  The defendant agrees not to argue for

15   a variance from the sentencing guidelines.  The defendant has

16   agreed to a sentence of 175 months in custody and 72 months

17   of supervised release to follow release from custody.

18        THE COURT:  Let me ask you a question about that I had

19   when I read the plea agreement.  Who is he agreeing with?

20        MR. CARLBERG:  The government.

21        THE COURT:  Well, it doesn't say that.

22        MR. CARLBERG:  It's a recommendation.

23        THE COURT:  It just says that he agrees to a guideline

24   sentence of 175.  But in your portion of the plea agreement,

25   it says that you'll recommend that he be sentenced to the low

1    end of the applicable guideline range.

2              MR. CARLBERG:  They're the same.

3              THE COURT:  What if you're both wrong on the guideline

4    range?  I don't really understand what your agreement is in

5    terms of what you're going to recommend.  And again, it's

6    only a recommendation, and I'll explain that to Mr. Warren

7    since the Court isn't bound by your recommendations.  But

8    what are you two agreeing to?

9              MR. CARLBERG:  We're agreeing to the low end of the

10   guidelines, which is 175 months as calculated by the parties.

11             THE COURT:  Do you agree with that, Mr. Greiner?

12             MR. GREINER:  Yes, your Honor.

13             THE COURT:  It doesn't necessarily say that, but I

14   just want to make sure the record's clear.

15             MR. CARLBERG:  I understand, your Honor.

16             THE COURT:  So both of you think 175 is the low end?

17             MR. CARLBERG:  That's what we think.

18             THE COURT:  Okay.  What if it's not?

19             MR. CARLBERG:  If it's not, then we deal with that

20   with the probative PSR, and the Court can sentence within the

21   guidelines or wherever the Court wants.  The defendant has

22   waived appeal of the sentence up to the statutory maximum.

23             THE COURT:  But what if the low end is 220 months?

24   What's your position then, there's no plea agreement?

25             MR. CARLBERG:  Your Honor, this is --

1          THE COURT:  I'm asking Mr. Greiner.  I've seen this

2     happen.

3          MR. GREINER:  The Court has seen it happen, and

4     actually I have seen it happen.  The agreement with the

5     government is that the sentence is at the low end of the

6     guidelines.  We have calculated that to be 175 months.  The

7     Court's question is what if the low end of the guidelines

8     turns out to be 200, 260.

9          THE COURT:  Yeah.

10          MR. GREINER:  That would not be pursuant to the

11     agreement of the parties.  So then the question, as the Court

12     says, as I'm thinking through, does that mean that the

13     agreement is invalid or void?

14          THE COURT:  Yeah.  Can he withdraw his plea?

15          MR. GREINER:  I'm not sure that he could withdraw his

16     plea, but I think that the parties would then have an

17     agreement submitting to the Court that we're agreeing to a

18     175-month sentence which would then be either a variance or a

19     departure, which would then mean we would have to argue a

20     variance or a departure which the plea agreement says we

21     can't argue a variance or a departure.

22          THE COURT:  Right.  It's not an 11(c)(1)(C), so you

23     guys aren't agreeing to a sentence of 175.  You're simply

24     saying this is what we think the guidelines --

25          MR. CARLBERG:  That's correct, your Honor.  And that's

1     how a lot of our plea agreements are phrased.  I understand

2     there's an issue with the language, but --

3                THE COURT:  Well, it's an issue for you because if it

4     turns out that it's a higher low end, what are you going to

5     argue?  Are you going to argue I'm bound by 175?

6                MR. CARLBERG:  Yes, your Honor.  That's how we

7     typically do that.  I've had to do that a number of times.

8                THE COURT:  Okay.  So you're going to argue I should

9     vary?

10               MR. CARLBERG:  No, not necessarily, your Honor.

11               THE COURT:  I'd have to.  If the low end of the

12    guidelines are 220 and you're recommending 175, I'd have to

13    vary.  That's the only way I could impose that sentence.  And

14    I'd have to have a reason for varying.

15               MR. CARLBERG:  That's true, you Honor, but the parties

16    are not allowed to argue for a variance.  The parties are

17    allowed to argue that the plea agreement spells out the terms

18    and what we believe the correct guidelines calculations are,

19    and we're going to stand by that.

20               Now, if probation comes in with something different or

21    the Court agrees it's something different, the Court is free

22    to go higher, obviously, and the Court can impose whatever

23    sentence it wants.  And the Court can use whatever basis it

24    wants to reach that.  But the parties do not have to agree

25    with the Court.  And the Court is not a party to the plea

1    agreement, so I don't think that it causes any problem with

2    the plea agreement or with the agreement of the parties.

3    There is a meeting of the minds, and I think I've just laid

4    out what that meeting is.

5              THE COURT:  Okay.  I understand.

6              MR. CARLBERG:  The defendant has also agreed to a

7    restitution order and to a forfeiture order.  He's agreed to

8    waive appeal related to any order of restitution.  The

9    government has agreed to recommend a low end of the

10   applicable guideline range, meaning 175 months, and to

11   dismiss at the time of judgment and sentence the remaining

12   counts of the indictment and not bring additional charges in

13   connection with the defendant's conduct at Loomis Wealth

14   Solutions and Nationwide Lending Group.

15             THE COURT:  Sorry, Mr. Carlberg.  But see, you added

16   language.  The plea agreement says, "The government will

17   recommend that the defendant be sentenced to the low end of

18   the applicable guideline range for his offense as determined

19   by the Court."  When you just said that on the record, you

20   read that as saying:  The government will recommend that the

21   defendant be sentenced to the low end of the applicable

22   guideline range for his offense which is 175 months.

23             MR. CARLBERG:  I'm happy to interlineate "as

24   calculated by the parties" if the Court would prefer.

25             THE COURT:  I just want to avoid this issue where, if

1    it's higher than 175, your plea agreement says, Judge, I'm

2    bound by a recommendation at the low end.  You do what you

3    need to do, but I'm bound to recommend 250 months.  Judge,

4    you can do what you want with that.

5          Now, when Mr. Greiner hears that, if I'm the defense

6    lawyer, I'm going to say that wasn't our deal, Mr. Carlberg.

7          MR. CARLBERG:  I understand the Court's concern.  I've

8    never done that.  Some of these plea agreements are recycled,

9    and we follow typical language in our plea agreements.  And

10   so I'm happy to make on the record perfectly clear that the

11   agreement is to recommend the low end of the guidelines as

12   calculated by the parties.  And I can interlineate it in the

13   written agreement since the Court's now pointing out that

14   there's a problem with the language, or maybe we should put

15   this over.

16         Do you want to put it over?

17         THE COURT:  It's up to you.  I mean the record is

18   clear now.  That language on page 5 really should be --

19         MR. CARLBERG:  We can go to trial.  Fine.

20         THE COURT:  We're not there.  I'm just trying to make

21   sure that we have an agreement.  I've seen these things fall

22   apart at sentencing.  I want to make sure that Mr. Warren

23   understands, and I'll go through that with him, that I can

24   impose whatever sentence I want.  But I want to make sure he

25   understands what the agreement was between the two of you,

1    which is as calculated by the parties, not as determined by

2    the Court.

3              MR. CARLBERG:  That's correct.

4              THE COURT:  Do you agree with that, Mr. Greiner?

5              MR. GREINER:  I'd agree with that, Judge.

6              THE COURT:  Okay.  Then through interlineation on page

7    5 on line 21 and 22, the language will be "as calculated by

8    the parties."  And I'll make that change through

9    interlineation.

10             MR. CARLBERG:  Thank you, your Honor.  We can initial

11   it if you'd like.

12             THE COURT:  Okay.  I'm sorry to put you through this.

13             MR. CARLBERG:  No problem.  Good point.  I appreciate

14   it.

15             THE COURT:  Go ahead.

16             MR. CARLBERG:  Finally, the government has agreed to

17   dismiss at the time of judgment and sentence the remaining

18   counts of the indictment, not bring charges in connection

19   with the defendant's conduct at Loomis Wealth or Nationwide

20   Lending Group, and not to oppose the defendant's request for

21   placement in Lompoc if security classification and space

22   availability accord.

23             Those are the essential terms of the agreement.

24             THE COURT:  Okay.  Mr. Greiner, anything else that you

25   think needs to be put on the record in terms of the essential

1  elements of the plea agreement?

2          MR. GREINER:  I think we have it, Judge.

3          THE COURT:  All right.  Mr. Warren, do you understand

4  that those are the terms of your plea agreement with the

5  government?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Okay.  Has anyone made any other promises

8  or assurances to you of any kind to get you to enter a plea

9  of guilty in this case?

10         THE DEFENDANT:  No, your Honor.

11         THE COURT:  All right.  The offenses to which you are

12 offering a plea of guilty are felony offenses.  If your plea

13 is accepted, you will be found guilty of these offenses.

14 That finding may deprive you of valuable civil rights, such

15 as the right to vote, the right to serve on a jury, and the

16 right to possess any kind of firearm.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Are you presently on probation or parole

20 for any other offense?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  All right.  As set forth in this plea

23 agreement -- I still need to go through this with you.  On

24 page 8, the maximum penalties.  First, for wire fraud, the

25 maximum sentence that I can impose is 20 years in prison, a

1  fine of $250,000, or an alternative minimum fine of the

2  greater of the gain to defendant of the loss caused, a

3  three-year period of supervised release, and a $100 special

4  assessment.  For the aggravated identity theft crime, the

5  maximum sentence that the Court can impose is two years'

6  imprisonment, which is a mandatory consecutive term to any

7  other term of imprisonment, a $250,000 fine, or an

8  alternative minimum fine of the greater of the gain to

9  defendant or the loss caused, a three-year period of

10 supervised release, and a special assessment of $100.

11         Also, you are acknowledging that I can order and

12 impose payment of restitution for the full loss caused by

13 your wrongful conduct.

14         You also are agreeing that the restitution order is

15 not restricted to the amounts alleged in the specific counts

16 to which you are pleading guilty.

17         You also are agreeing that you will not attempt to

18 discharge in any present or future bankruptcy proceeding any

19 restitution that I impose.

20         Also, if you're put on supervised release and you

21 violate the terms of your supervised release, I can revoke

22 your supervised release, and I can require you to serve an

23 additional term of imprisonment.

24         So those are maximum penalties.

25         There are, as we've been discussing, statutory

1    sentencing factors and sentencing guidelines that have been

2    issued which the Court is required to consider and follow in

3    imposing the appropriate sentence in a case.

4          Have you had enough time to discuss with your attorney

5    how these advisory sentencing guidelines and statutory

6    sentencing factors might apply to your case?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  And do you have a general

9    understanding as to how those guidelines and statutory

10   sentencing factors might apply to your case?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  All right.  I want you to understand that

13   I'm not able to determine what sentence you're actually going

14   to receive until I've had a chance to review the presentence

15   report, the advisory guidelines, the statutory sentencing

16   factors, and after you, your attorney, and the government's

17   attorney have had an opportunity to speak at your sentencing

18   hearing.

19         It's also important for you to understand that even

20   though the government has agreed to make certain

21   recommendations as to what sentence you should receive and

22   your lawyer has agreed to make a certain recommendation,

23   neither of those recommendations are binding on this Court.

24   And if I don't accept the recommendation, you're still going

25   to be bound by your plea, and you'll have no right to

1    withdraw it.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Okay.  I also want you to understand that

5    once it's been determined what advisory guidelines apply to

6    your case, I still have the authority in some circumstances

7    to impose a sentence that is greater than those guidelines or

8    less than those guidelines.

9              Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Okay.  I also want you to understand that

12   parole has been abolished.  So if you are sentenced to

13   prison, you will not be released on parole.

14             You or the government may have the right to appeal any

15   sentence I impose.  However, by entering your pleas of guilty

16   today, there is a waiver provision in this plea agreement in

17   which you are giving up your right to collaterally attack or

18   appeal any or all parts of this plea and/or any sentence I

19   impose.

20             Do you understand that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And, Mr. Greiner, are you satisfied that

23   your client has made a knowing and voluntary waiver of the

24   right to collaterally attack or appeal the plea or sentence?

25             MR. GREINER:  Yes, your Honor.

1          THE COURT:  All right.  Mr. Warren, you do have a

2      right to continue to plead not guilty and to have a trial in

3      this case.

4          In addition, you have the following constitutional

5      rights if you continue to plead not guilty:

6          The right to be presumed innocent.  As I mentioned, a

7      trial by jury.  The right to have the government prove your

8      guilt beyond a reasonable doubt.  The right to an attorney at

9      all phases of the proceedings.  The right to present a

10     defense to the charges.  The right to see and hear all

11     witnesses and evidence that would be presented against you.

12     The right to cross-examine those witnesses through your

13     attorney.  The right to use the power of this Court to bring

14     in your own witnesses and evidence in order for you to

15     present your defenses.  The right to remain silent.  And the

16     right to not have your silence or decision to not present

17     evidence at trial used against you.

18         Do you understand your constitutional rights as I've

19     just described them to you?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Before I can accept a guilty plea from

22     you, you have to give up each of these constitutional rights.

23         Are you willing to do so at this time?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you join in the waiver, Mr. Greiner?

KELLY O'HALLORAN, OFFICIAL COURT REPORTER, USDC -- (916) 448-2712

1          MR. GREINER:  I do, your Honor.

2          THE COURT:  Mr. Carlberg, if you would please state

3     the essential elements of the two offenses so I can be

4     assured the defendant understands the charges.

5          MR. CARLBERG:  Yes, your Honor.  At a trial by jury,

6     the government would have to prove beyond a reasonable doubt

7     each and every element of the two offenses:

8          For wire fraud, first, that the defendant knowingly

9     participated in a scheme and artifice to defraud or in a plan

10    for obtaining money or property by making false promises or

11    statements.

12         Second, that the defendant knew that the scheme was

13    misleading or that the promises or statements were false.

14         Third, that the scheme and/or the promises or

15    statements were material, that is, they had a natural

16    tendency to influence or were capable of influencing a person

17    to part with money or property.

18         Fourth, the defendant acted with the intent to

19    defraud.

20         And, fifth, the defendant used or caused to be used

21    the interstate wires to carry out or attempt to carry out an

22    essential part of this scheme.

23         With respect to the elements of aggravated identity

24    theft, the government would have to prove, first, in addition

25    to the felony offense of making false statements in an

 1   application for a passport, secondly, that the defendant

 2   knowingly transferred, possessed, or used without lawful

 3   authority a means of identification of another person,

 4   meaning any name or number that may be used alone or in

 5   conjunction with any other information to identify a specific

 6   individual.

 7          THE COURT:  All right.  Mr. Warren, do you understand

 8   the elements of the two offenses?

 9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Attached to your plea agreement is an

11   exhibit, Exhibit A.  It's the factual basis for your plea.

12   It's lengthy.

13          Have you had enough time to review this exhibit with

14   your attorney, go over it with your attorney?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  So on pages 17 through 22 of the plea

17   agreement.  Do you, in fact, agree that the facts set forth

18   in this exhibit, that each and every fact is true and

19   accurate?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  All right.  The Court will accept

22   Exhibit A as the factual basis for the pleas in this case.

23          Okay.  Let's start with Count 25.  The charge is wire

24   fraud, a violation of 18 U.S.C. Section 1343.  It involves

25   the date of January 23rd, 2009.  Sender:  Colonial Bank,

1   Birmingham, Alabama.  Recipient:  River City Bank,

2   Sacramento, California.  A $410,831.45 wire transfer.

3        As to that crime charged in Count 25, how do you now

4   plead:  Guilty or not guilty?

5        THE DEFENDANT:  Guilty, your Honor.

6        THE COURT:  All right.  And focusing then on Count 43

7   of the indictment, the charge is a violation of 18 U.S.C.

8   Section 1028A, aggravated identity theft.  The count deals

9   with a crime that occurred on November 26, 2008, identity

10  possessed with name and birth date of Anthony Han Kim,

11  defendants both Warren and Cavell, as set forth in the

12  indictment.

13       As to that charge in Count 43, how do you now plead:

14  Guilty or not guilty?

15       THE DEFENDANT:  Guilty, your Honor.

16       THE COURT:  All right.  It is the finding of the Court

17  in the case of United States versus Christopher J. Warren

18  that the defendant is fully competent and capable of entering

19  an informed plea.  The Court also finds that there is a

20  factual basis for his pleas and that he has made a voluntary,

21  knowing, and intelligent waiver of his constitutional rights.

22  His pleas to Count 25 and Count 43 are therefore accepted,

23  and he is adjudged guilty of those two offenses.

24       All right.  We're going to set sentencing as requested

25  for April 24th, 2012.  A written presentence report will be

1    prepared by the probation officer to assist the Court in

2    sentencing.  Mr. Warren, you will be asked to give

3    information for that report.  When you give that information,

4    your attorney can be present if you wish.  You'll be able to

5    read the presentence report before your sentencing hearing,

6    and you and your attorney will be given an opportunity to

7    speak on your behalf at your sentencing hearing.

8         Again, sentencing is set for April 24, 2012, at 9:30

9    in this court.  Mr. Warren is to remain in custody pending

10   judgment and sentencing.

11        See you in April.

12        MR. GREINER:  Thank you, Judge.

13        THE COURT:  Thank you.

14        MR. CARLBERG:  Thank you, your Honor.

15        (Proceedings were concluded.)

16

17

18

19

20

21

22

23

24

25

1           I certify that the foregoing is a correct transcript

2      from the record of proceedings in the above-entitled matter.

3

4

5                          /s/ Kelly O'Halloran

6                          KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25