DENNIS S. WAKS, #142581
Attorney at Law
P. O. Box 2655
Sacramento, CA 95812-2655
Tel: 916-498-9871

Attorney for Defendant
CHRISTOPHER J. WARREN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiff, <br><br>v. <br><br>CHRISTOPHER J. WARREN, <br><br>Defendant. | Case No. 2:09- cr-00121--JAM <br><br>NOTICE OF MOTION AND MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE <br><br>Date:  January 18, 2022 <br>Time:  9:30 a.m. <br>Judge: Hon. JOHN A. MENDEZ. |

**TO:   UNITED STATES ATTORNEY PHILLIP A. TALBERT and ASSISTANT UNITED STATES ATTORNEY PAUL A. HEMESATH:**

PLEASE TAKE NOTICE that on January 18, 2022 at 9:30 a.m. or as soon thereafter as the case may be heard by the Court, CHRISTOPHER J. WARREN moves for early termination of his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1).

**INTRODUCTION**

MR. WARREN hereby moves the Court to terminate on January 18, 2022 his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). The 36-month term of supervised release (TSR) began on July 15, 2020; MR. WARREN will have completed **over 18 months** of supervision without incident and has achieved a number of goals since his release. He is now married, provides monthly non-Court ordered child support, is regularly engaged in voluntary

1

community service, maintains full time employment and has recently graduated from the University of Nevada at Reno with a graduate degree. Senior United States Probation Officer Wendy E. Reyes, who initially supervised MR. WARREN upon his release, informed the undersigned that she would support MR. WARREN's request for early termination.  He is now on a low risk, informal supervision case load and his present federal probation officer, Miriam E. Olea, indicates that MR. WARREN has done well and that she also supports early termination for MR. WARREN. As of January 18, 2022, he will have completed over 50% of his term of Supervised Release.

## II.  APPLICABLE LAW

Title 18, section 3583(e)(1) of the United States Code authorizes the Court to terminate a defendant's felony term of supervised release at any time after the expiration of one year of supervision if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Since MR. WARREN has been "under supervision for at **least 18 months**… there is **a presumption** in favor of recommending early termination for…supervised releasees". (Guide to Judiciary Policy, Vol. 8E, Ch.3, Page 29, emphasis added).

Section 3583(e) directs the Court to consider the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(1) (nature and circumstances of offense, and history and circumstances of defendant); 3553(a)(2)(b)(adequate deterrence to criminal conduct); 3553(a)(2)(C) (protect the public from further crimes of defendant); (a)(2)(D) (provide needed training, care, or treatment); (a)(4) (kinds of sentence available); (a)(5) (policy statements); (a)(6) (avoid unwarranted disparities); and (a)(7) (restitution).

On February 16, 2012, the Honorable Robert Holmes Bell, Chair of the Committee on Criminal Law of the Judicial Conference, issued a memorandum to all United States District Court Judges encouraging them to grant early termination of supervised release in appropriate

cases as an effort to reduce expenditures in the probation and pretrial services programs. Terminating "appropriate cases before they reach their full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." Judge Bell's memorandum notes that supervision costs approximately $3,938 per year per case; a more recent study notes that it costs the taxpayers over $4,400 per year. Analysis by the Administrative Office of the Courts indicates that offenders who received early termination of supervised release were "arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often." Accordingly, "[f]rom a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize public safety." *Id.*

**Facts Applicable to this Conviction**

Your Honor, having sentenced MR. WARREN, is well aware of the facts surrounding this case. Other defendants associated with this offense have also completed their custody and are now released as well. Mr. Scott Cavell is no longer on supervision. Mr. Lee Loomis, who received a 12-year sentence, two and one-half years less than MR. WARREN, is out of custody as well. MR. WARREN served all of his BOP time without any incidents. He was productive while incarcerated in taking numerous educational classes that were offered and providing services to other inmates. It should be noted that MR. WARREN, while in custody, received his A.A. degree in 2013, his Paralegal degree in 2014, another A.A. in 2015 and ultimately received his B.A. degree near the end of 2015. On December 4, 2021, MR. WARREN and his wife, children and parents went to the University of Nevada Reno campus to watch him walk across the stage and receive his Master of Science in Business Analytics Degree. (See attached Degrees).

While MR. WARREN continues to have a large sum of restitution to pay, one "victim", Taylor, Bean and Whitaker, having the largest outstanding sum owed at $7,457,118.18, had its

financial officer held responsible for over $3 billion in fraud during this same time period. Lee Farkas was released from custody in September, 2020. Mr. Farkas only served 9 years of a 30-year sentence, five years less than MR. WARREN. (Mr. Farkas was released early due to the COVID pandemic).

Additionally, in a similar case to MR. WARREN'S, defendant Billy Steffey in the District of Nevada, 2:12-cr-00083-APG-GWF, was sentenced to a term of 108 months imprisonment for his involvement in Identify Theft and Financial Fraud. His restitution is $50,893,166.35. Over the Governments written objection, Mr. Steffey was terminated from his TSR on August 4, 2021 after serving approximately 1 year of his 3-year term of supervision. Mr. Steffey was originally a Criminal History Category III, while Mr. Warren was a Category I.

MR. WARREN pays $200 per month toward his restitution. Knowing of course that MR. WARREN will never pay off the restitution, regardless of how many years he remains on supervision, continued restrictions on supervision are of no benefit to the community. The government, through the Financial Litigation Unit (FLU), is well aware of MR. WARREN'S whereabouts and will continue to be aware of his finances. He will be under the watchful eye of the government the entirety of his life so they can obtain restitution from MR. WARREN. His continued supervision will not give the victims any benefit.

According to his former wife, Melissa Gallo, "I had no idea what to expect after Chris was sent to a halfway house after serving over 4000 days away from his kids and our family on his prison bid. Today Chris Sr. is actively involved in the life [of] the boys and not only paying child support but, doing the extra things". She goes on to state that, "In all it's the best version of Chris I have seen".  Melissa indicates that since his release from custody, Chris is more respectful to us and "makes it clear that the things that he used to care about he no longer cares about".  He now cares about the family, the community and going to church. (See attached character letters).

His present wife, Holly Carlson, stated that "she met Chris right after he was released. I

remember the first time I met him: coffee turned into lunch turned into theological discussions. Those talks go on to this day. I understand that loving him is not a reason to grant the request that he brings the Court. As a psychiatric and wound nurse, and a single mom, I believe that my observations of Chris over the past year and a half that I have known him should be taken into consideration. It has been amazing to watch Chris flourish since I have known him…. We are involved in our church community, Oak Hills in Folsom, and we love to dream about how we can care for our corner of the world. I believe that Chris does not represent a risk to society just as strongly as I am confident that he does not pose a risk to myself, my daughter, or our families".

In a letter written by pastor Kent Carlson, father of Chris' wife Holly, he states that "from the first moment that I met Christopher, he has been humble, truthful, candidly self-disclosing and committed to living a high-integrity life. He is kind to our entire family and respectfully developed relationships with everyone". He goes on to point "to the experience of being arrested and imprisoned, while a brutal and costly season of his life, as a gift that turned his life around". The pastor ends by stating that "Chris is very ready to fully integrate into society."

### III. MR. WARREN SATISFIES ALL THE CRITERIA FOR EARLY TERMINATION

MR. WARREN satisfies all factors set forth for early termination. As of January 18, 2022, he will have completed more than 18 months, over one half of his 36-month term of supervision and he does not require any further programming or treatment. According to his Probation Officers, originally Senior Officer Wendy E. Reyes and presently United States Probation Officer Miriam E. Olea, MR. WARREN "has done more than what is expected". MR. WARREN has consistently tested clean, and he has had no new arrests or law enforcement contacts.

MR. WARREN fully accepted responsibly before sentencing and admitted to Probation

and the Court that in late 2007 to 2008, he committed Wire Fraud and Aggravated Identity Theft. On February 11, 2009 MR. WARREN was arrested and remained in county jail until he was sent to Federal prison. MR. WARREN was sentenced on September 11, 2012 to a term of 175 months in custody, no fine, over 19 million dollars in restitution, partially Joint and Severally liable with Scott Cavell and a supervised release term of 36 months. He entered the Federal Bureau of Prisons (BOP) soon after his sentencing.

In the more than fourteen years since he was involved in these offenses to January 18, 2022, he completed his 175-month sentence, and MR. WARREN, while in the BOP, attended the 500-hour Residential Drug Abuse Program; during MR. WARRENS term of Supervised Release, he has been fully compliant, terminated early from counseling because it was felt that he did not need to be in treatment and on January 27, 2021, he was placed on a low-risk, unsupervised caseload by Probation.

MR. WARREN is now employed full time and has made restitution payments even when he could not afford to, when work and pay were bleak in the middle of the Covid -19 pandemic.  He can honestly say that even though he owes an enormous amount of restitution to his victims, that every one of those payments, no matter how insignificant to the balance owed, was earned by him at an honest job and paid by him.  It is refreshing to MR. WARREN, that in his adult life, he has an honest job to work every day to earn a living.

MR. WARREN is a hard worker and is trying his best to put the "old Chris" behind him. At the time of the offense, MR. WARREN was much younger and lived a reckless lifestyle, regularly smoking marijuana, using cocaine and drinking alcohol on an almost daily basis. Today he is a very different man, attending church regularly with his wife and family, participating in community outreach programs and doing all he can to resurrect his life. MR. WARREN has recognized his mistakes and works hard to become a better father, husband and community member. Chris Warren has submitted numerous character reference letters from

individuals who have known him for a long time and also from people who have known him since his release from custody; these character letters speak to the positive strides that he has made since his involvement in these offenses and since his release from the BOP; they are included in the attached Exhibits submitted by MR. WARREN with this Motion.

Frank Koehler, Captain and Jail Commander of the Nevada Co. Jail where Chris Warren was an attendant and who has never written a letter of support for an inmate in his 36 years of being in law enforcement, wrote a letter for Chris. He stated that Chris was a "model inmate", who "has attempted to better himself by furthering his education" and who "was also instrumental in assisting this agency in an internal affairs investigation…that comes at great personal risk" to Mr. Warren "should his cooperation become known". (See enclosed letter).

While at the Nevada County jail, Chris took a number of classes and was called a true scholar by one of his teachers, Adult Ed. Teacher Valerie Dembrowsky. With the assistance of Ms. Dembrowsky, Chris Warren wrote an article that was published in Anthropology News, one of my personal favorites and "he tutors students in math outside the classroom. He solicits new students for the GED program, the high school diploma program, and most recently for the junior college opportunity, offering guidance on the enrollment process. He donates textbooks and paper to the adult education program". Ms. Coffin, another teacher at the county jail, said he is an "excellent role model for my high school diploma and GED students".

MR. WARREN has complied with all the requirements of his supervised release. Since his release, MR. WARREN has demonstrated that he is more than capable of living a law-abiding life and that further supervision is not necessary to protect the public. MR. WARREN was released to the halfway house in January of 2020. He was a model resident during his four-month stay. He found employment in the first few weeks and worked as a waiter at Bubba Gumps on Pier 39 in San Francisco until COVID closed the restaurant and he moved to home confinement in Sacramento to live with his parents. He has maintained employment since

Bubbas closed down. MR. WARREN is now an employee for a business consulting firm and is earning a reasonably good wage. He pays his taxes and takes care of his newly married wife and two sons. He has a valid driver's license and his vehicle is registered and insured.

### IV.     SUMMARY OF COMPLIANCE

MR. WARREN has complied with all Court-imposed mandatory, standard and special conditions of Supervised Release. He has demonstrated stability within the community, has incurred no new arrests, remains clean and sober, is not identified as a risk to the community and his early termination is "in the interest of justice". The supervisee is statutorily eligible for early termination and has met the factors listed within the Guide to Judicial Policy for early termination consideration. It is the opinion of both of the federal probation officers that the supervisee has derived maximum benefit from supervision and is not in need of continued supervision. In one of the last character letters that I received, long time friend Sasha Smith stated in the enclosed letter that "I have known Chris for many years before he was incarcerated and reconnected once he was out. He went in one way and came out another. I have been thrilled to see the transformation". She ends her letter by discussing MR. WARRENS voluntary work in different communities: "Thank you for considering this in his current request to end supervised release. I can not wait to see what God can do with Chris if he is able to work more hands on in these communities".

### V.     RECOMMENDATION

MR. WARREN has complied with all requirements of his supervised release according to his Probation Officers. MR. WARREN has fully reintegrated into the community and does not need supervised release to provide him with any additional training or treatment. The badly needed resources should be saved for other newly released federal inmates that could use the

additional time and attention.

MR. WARREN has completed every condition asked of him and has gone far beyond the requirements of his supervision. He has fully reintegrated into society and is a valued worker, family member, and a law-abiding citizen. He has achieved stable community reintegration in terms of housing and employment; importantly, he has a good support system to ensure his continued success in life after incarceration. MR. WARREN lives in the Sacramento area, where he grew up, as does his parents, sisters and a lot of his friends. In his younger days before drugs and alcohol became his primary indulgence, he was an Eagle Scout and he later attended the Air Force Academy until he was dismissed for drug abuse.

MR. WARREN is in full compliance with all the terms of his Supervision. He satisfies every factor for consideration in 18 U.S.C. § 3583(e).  Given MR. WARREN's commendable turnaround, including his solid performance in county jail, at the halfway house and on supervised release, he respectfully requests that the Court follow the "**presumption** in favor of recommending early termination" and order that the rest of his term of supervised release, now less than 18 months, be terminated as of January 18, 2022 under 18 U.S.C. § 3583(e). Should the Court feel that a hearing is unnecessary, a proposed order is attached.

Dated: January 4, 2022

/s/Dennis S Waks
DENNIS S. WAKS
Attorney for CHRISTOPHER J. WARREN